## UNITED STATES DISTRICT COURT FOR
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BENNETT BEER, on Behalf of Himself and All Others Similarly Situated,** | |
| **Plaintiff,** | **CLASS ACTION COMPLAINT** |
| **vs.** | **JURY TRIAL DEMANDED** |
| **IKEA North America Services, LLC,** *d/b/a* as **IKEA** | |
| **Defendant.** | |

## CLASS ACTION COMPLAINT

Plaintiff, Bennett Beer (Plaintiff or Mr. Beer), by and through undersigned counsel, on behalf of himself and all persons similarly situated, complains and alleges as follows:

## NATURE OF THE CASE

1.      This is a civil action seeking monetary damages, restitution, declaratory relief, and injunctive relief from IKEA North America Services, LLC ("IKEA"), arising from IKEA's breach of contract and false and deceptive representations regarding its coupon offering $25 off a purchase of $150 or more before tax. *See* Ex. A (example of such a coupon).[1]

2.      IKEA prominently advertises its coupon, offering $25 off a purchase of $150 or more before tax (*e.g.*, "the July MEGA $25 off").  IKEA also proximately advertises its return policy, as follows:

> **It's OK to change your mind. If you're not totally satisfied with your IKEA purchase you can return it within 365 days, together with proof of purchase, for a full refund.**

*See* Ex. B.[2]

---

[1]  *See also*  https://info.ikea-usa.com/MakeRoomForNature/Content/pdf/coupon.pdf (last visited 8/16/2018) (example of similar coupon).

[2]  *See also*  https://www.ikea.com/ms/en_US/customer-service/about-shopping/return-policy/index.html (last visited 8/16/2018) (IKEA website stating its return policy).

3.      These statements are false in this instance.  When customers utilize an IKEA coupon to purchase over a certain amount before tax and then return merchandise, IKEA spreads the coupon value across all items purchased, so the customer does not receive a full refund on the returned merchandise.

4.      This contradicts IKEA's express, unambiguous representations in the coupon agreement.  As a result, customers are not provided a full refund on the returned merchandise as promised, and IKEA keeps for itself the portion of the coupon that it has allocated to the returned merchandise, with no regard for the amount over $150 (or other set amount specified by a coupon) of the original purchase.

5.      IKEA's deceptive conduct has injured Plaintiff and other Class members, and constitutes breach of express and implied contract, breach of the implied covenant of good faith and fair dealing, fraud, fraudulent inducement, and fraud in the execution, negligent misrepresentation or omission, unjust enrichment, and a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-1 *et. seq.*  As a result, Plaintiff and other Class members are entitled to monetary damages, declaratory and injunctive relief, fees, costs, and other relief available at law or equity.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Sunoco.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because IKEA is subject to personal jurisdiction here and regularly conducts business in the Eastern District of Pennsylvania, because Plaintiff resides in this district and his transaction at issue occurred in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## THE PARTIES

8.     Plaintiff Bennett Beer is a resident and citizen of the Commonwealth of Pennsylvania.

9.     Defendant IKEA North America Services, LLC ("IKEA"), is a Delaware limited liability company operating a chain of home furnishing retail stores in North America. The company was founded in 1985 and has its principal place of business located at 420 Alan Wood Road, Conshohocken, Pennsylvania, 19428.  IKEA regularly conducts business in Pennsylvania. It has specific, as well as general and systematic, contacts in Pennsylvania.  IKEA North America Services, LLC operates as a subsidiary of IKEA Holdings U.S., Inc., a subsidiary of INGKA HOLDING B.V., a Swedish company.  On information and belief, promotional and administrative decisions about IKEA coupons and policy affecting U.S. residents are made by IKEA personnel in Pennsylvania.

10.     IKEA may be served through its registered agent, The Corporation Trust Company, located at the Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## COMMON FACTUAL ALLEGATIONS

### A.     The Coupon

11.     IKEA prominently advertises coupons available to all customers.  Among other times, in July of 2018, IKEA made a coupon available promising "$25 off a purchase of $150 or more before tax."  *See* Ex. A.

12.     The terms of the coupon and its use were printed on the coupon itself:

> Offer valid April 21 - April 22, 2018. One discount per household. Discount will be taken prior to tax and shipping and handling. Valid in US stores only. No cash value. Printed coupon or electronic copy must be presented at time of purchase. Void if altered, copied, transferred, resold, sold through online auction or prohibited by law. Cannot be combined with other IKEA offers or discounts, except IKEA FAMILY product offers. Not valid on IKEA Kitchen Event offer, IKEA services, Eat for Free or Kids Eat Free IKEA Food Offers, IKEA FAMILY Individual Kitchen Planning Service Offer or in the IKEA Restaurant or Swedish Food Market. Not valid on previous purchases or the purchase of IKEA Gift Cards. Additional terms and conditions may apply. See store for details.

13.     Further, the coupon explains how it can be used: **To redeem your coupon, bring it to your local IKEA store or display it on your phone at checkout.**

14.     Thus, when used, the $25 discount coupon should accrue for every purchase of over $150 or more before tax.

**B.      The Return Policy**

15.     IKEA prominently advertises its return policy to all customers.  *See* Ex. B.

16.     The terms of the return policy are:

> It's OK to change your mind. If you're not totally satisfied with your IKEA purchase you can return it within 365 days, together with proof of purchase, for a full refund. Refunds will be made in the same form of payment originally used to make the purchase.

17.     Returns can be made in the store, or pick-up is available.  Even if a customer does not have the original receipt, if the purchase was made within a year, IKEA can attempt to locate it using information from the original the purchase.

18.     Thus, IKEA's return policy assures customers that they can return merchandise and get "a full refund."

C.     **Plaintiff's Experience with IKEA**

19.     Plaintiff, Mr. Bennett Beer, was a customer at IKEA's store in Conshohocken, PA. On July 8, 2018, he went to the Conshohocken store and purchased merchandise worth over $150.

20.     He presented the July MEGA $25 off coupon and the coupon was applied to his purchase such that he paid $25 less on the merchandise that he purchased. His total bill before tax on July 8, 2018 was $351.99. His $25 discount was applied to that, totaling $326.99. Pennsylvania's 6% sales tax was then applied.

21.     Two days later, on July 10, 2018, Mr. Beer returned to the Conshohocken IKEA store and returned a shelving unit (identified as *KALLAX shlf ut*). The product's purchase price was $79, but Mr. Beer was only given credit for the purchase in the amount of $73.39, plus tax.

22.     A closer inspection of Mr. Beer's original receipt shows that IKEA does not sub-total all of the items, then apply a $25 discount. Instead, the register calculates the ratio the $25 reflects across all the purchases and applies that ratio to reduce the price of each item. The equation can be summarized as follows:

$$\underline{\text{Total cost of purchase before tax}} \div ((\text{total cost of purchase before tax}) - \$25) = \text{The \% to be applied to each piece of merchandise for purposes of return value}$$

23.     In Mr. Beer's case, the calculation is $351.99/$326.99 = .9298989. So, the register reduces the price of each item by multiplying it by .9298989.

24.     Mr. Beer returned an item originally worth $79.00, but after the above discount was individually applied to it, he only received back $73.39.

25.     Even though Mr. Beer's total transaction was still over $150 even after the return is factored in, he received only $73.39 back. So, he effectively received less than the $25.00 off his total purchase, as promised. This directly contradicts IKEA's promises and representations.

26.     The arithmetic demonstrating how Mr. Beer received less than $25 off can be stated thusly.  After his refund, Mr. Beer should have paid the following before tax:  $351.99 (original total purchase) - $79 (returned item) - $25 (coupon) = $247.99.

27.     However, because IKEA spreads the coupon savings the way it does, he actually ended up paying more:  $326.99 (original gross total price after coupon ratio applied) - $79.39 (returned item's value with coupon ratio applied) = $250.60.

28.     Thus, Mr. Beer should have been out of pocket $247.99 after his return.  Instead, he was out of pocket $250.60, or about $2.61 more than he should have been.

29.     Thus, contrary to its promises and representations, IKEA does *not* provide a full refund on merchandise that was purchased using the coupon despite meeting all the terms of the contract and does not honor the explicit terms of its own coupon offerings.

C.     **IKEA Benefits from Its Conduct**

30.     IKEA substantially benefits from its fraudulent, deceptive, and unfair conduct.  By offering customers a discount on merchandise and a full refund on returns, IKEA has lulled consumers into making purchases when they might not have, or that they would have made elsewhere, and/or at a lower price.

31.     In addition, IKEA has also enriched itself by not returning back the full refund value of the merchandise purchased by putative Class members and keeping the money for itself.

**CLASS ALLEGATIONS**

32.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

- 6 -

33.     The proposed classes are defined as:

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action through class certification, used an IKEA coupon that promised a dollar amount off a set total purchase amount before tax and returned an item, but the total purchases still exceeded the set total amount before tax even after the return. (the "National Class"); and, alternatively,

> All persons in the Commonwealth of Pennsylvania who, within the applicable statute of limitations preceding the filing of this action through class certification, used an IKEA coupon that promised a dollar amount off a set total purchase amount before tax and returned an item, but the total purchases still exceeded the set total amount before tax even after the return.

The National Class and the Pennsylvania State Subclass are collectively referred to as the "Classes." Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

34.     Excluded from the Classes are IKEA, its parents, subsidiaries, affiliates, officers and directors, any entity in which IKEA has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

35.     The members of the Classes are so numerous that joinder is impractical. The Classes consist of hundreds or thousands of members, the identities of whom are within the knowledge of and can be ascertained only by resort to IKEA's records.

36.     The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, is an IKEA customer that used the coupon, returned merchandise and still had total purchases in excess of a set amount before tax even after the return. The representative Plaintiff, like all Class members, has been damaged by IKEA's misconduct in that they were not given a full refund and/or were not given full value of the coupon discount. Furthermore, the factual basis of IKEA's misconduct is common to all Class members and represents a common thread of conduct resulting in injury to all members of the Classes.

- 7 -

37.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

38.     Among the questions of law and fact common to the Classes are whether IKEA:

a.     Breached the promise that customers would receive a promised amount off total purchases (*e.g.*, $25) of set amounts (*e.g.*, $150 or more) before tax.

b.     Breached the promise that customers would receive full refunds on validly returned merchandise.

c.     Unlawfully, falsely, deceptively, or misleadingly represented that customers would receive a promised amount off total purchases (*e.g.*, $25) of set amounts (*e.g.*, $150 or more) before tax.

d.     Unlawfully, falsely, deceptively, or misleadingly represented that customers would receive full refunds on validly returned merchandise.

e.     To the extent applicable, whether and how long IKEA fraudulently concealed its past and ongoing wrongful conduct from Plaintiff and other members of the Classes;

f.     Was unjustly enriched through the company's actions; and

g.     Violated consumer protection and other state law.

39.     Other questions of law and fact common to the Classes include:

a.     The proper method or methods by which to measure damages; and

b.     The declaratory and injunctive relief to which the Classes are entitled.

40.     Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful conduct and the same or substantially similar unconscionable conduct by IKEA.  Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

41.     IKEA acted on grounds generally applicable to the entirety of the Classes, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Classes as a whole.  Injunctive relief is necessary to prevent further unlawful conduct by IKEA. Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain IKEA from continuing to engage in unlawful conduct.

42.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

43.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of IKEA, no Class member could afford to seek legal redress individually for the claims alleged herein.  Further, the prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct.  Therefore, absent a class action, the Class members will continue to suffer losses and IKEA's misconduct will proceed without remedy.

44.     Even if Class members themselves could afford such individual litigation, the court system could not.  Individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

45.     Notice to the Classes may be made by publication or otherwise, including based on IKEA's records.

<b><u>FIRST CLAIM FOR RELIEF</u><br>
<u>BREACH OF EXPRESS OR IMPLIED CONTRACT AND THE IMPLIED COVENANT<br>
OF GOOD FAITH AND FAIR DEALING</u></b>

46.     Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

47.     Plaintiff brings this claim individually and on behalf of the proposed Classes against Defendants.

48.     The coupon provided to the Plaintiff and the Class Members constitutes a promise on behalf of IKEA and as such is a valid, enforceable contract requiring IKEA to provide a promised amount off total purchases (*e.g.*, $25) of set amounts (*e.g.*, $150 or more) before tax when applicable.

49.     Plaintiff and the proposed class members' use of the coupon complied and fulfilled all obligations under the coupon agreement and/or have had any alleged non-performance excused by reason of IKEA's actions.

50.     IKEA's return policy provided to the Plaintiff and the Class Members constitutes a promise on behalf of IKEA and as such is a valid, enforceable contract requiring IKEA provide a full refund on returned merchandise when applicable.

51.     Plaintiff and the proposed class members' return of merchandise purchased with the coupon complied and fulfilled all obligations under the return policy agreement and/or have had any alleged non-performance excused by reason of IKEA's actions.

52.     IKEA materially breached its promises with Plaintiff by failing to perform their obligations by either or both (1) not providing a promised amount off total purchases (*e.g.*, $25) of set amounts (*e.g.*, $150 or more) before tax, and/or (2) not providing a full refund on returned

merchandise purchased with the coupon when the total purchases still exceeded set amounts before tax even after the return.

53.    As a direct result of material breaches by IKEA as set forth herein, Plaintiff was damaged as may be shown according to proof at time of trial.  The injury consists of the amount of the reduction in price assigned by IKEA to each product purchased with the coupon and then returned for the reduced price when the total purchases still exceeded a set amount before tax after the return.

54.    Further, every contract imposes upon each party a duty of good faith and fair dealing in its performance.  The contracts between Plaintiff and IKEA contain an implied covenant of good faith and fair dealing whereby neither party can do anything to infringe upon the other party's rights to the benefits of the contracts.  Accordingly, IKEA had a duty to act in good faith and consistent with the terms of the contracts.

55.    IKEA's conduct, as set forth herein, breached the implied covenant of good faith and fair dealing in the contracts with Plaintiff and the Classes.

56.    For example, IKEA has materially breached the implied covenant of good faith and fair dealing by, amongst other things set forth in this Complaint, promising to provide a full refund returned merchandise, and failed to do so.

57.    As a direct result of Defendants' material breach of the covenant of good faith and fair dealing, as set forth herein, Plaintiffs have been damaged as may be shown according to proof at time of trial.

## SECOND CLAIM FOR RELIEF
## FRAUD, FRAUDULENT INDUCEMENT, AND FRAUD IN THE EXECUTION

58.     Plaintiff repeats the preceding paragraphs as if set forth fully herein.

59.     IKEA affirmatively misrepresented and/or did not disclose sufficient facts to render non-misleading its statements about customers receiving a full refund on returned goods when they purchase goods with the coupon.

60.     IKEA knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that omission of material facts rendered such representations false or misleading.   IKEA also knew, or had reason to know, that its misrepresentations and omissions would induce Class members to purchase additional merchandise at IKEA locations.

61.     IKEA's misrepresentations or omissions were material and a substantial factor in Plaintiff and Class members' making purchases and additional purchases of merchandise at IKEA locations.

62.     IKEA intended its misrepresentations or omissions to induce Plaintiff and Class members to make purchases and additional purchases of merchandise at IKEA locations, or had reckless disregard for same.

63.     But for these misrepresentations (or omissions), Plaintiff and Class members would not have made purchases of merchandise at IKEA locations, and/or would not have made additional purchases of merchandise, an/or would have made purchases elsewhere.

64.     Plaintiff   and   Class   members   were   justified   in   relying   on   IKEA's misrepresentations.   The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated, to each Class member.

65.    IKEA failed in the execution of the promised discount by not honoring, applying, or handling it correctly as represented in the case of Plaintiff and Class members.

66.    Plaintiff and Class members were damaged by reason of IKEA's misrepresentations or omissions alleged herein.

### THIRD CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION OR OMISSION

67.    Plaintiff repeats the preceding paragraphs as if set forth fully herein.

68.    IKEA had or undertook a duty to accurately and truthfully represent to consumers the truth regarding its discount coupon and return policy.

69.    IKEA failed to exercise ordinary care in making representations concerning its discount coupon and return policy.

70.    IKEA negligently misrepresented or omitted facts regarding its discount coupon and return policy.

71.    IKEA's statements were false at the time the misrepresentations were made (or at the time omissions were not made).

72.    IKEA knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that omission of material facts rendered such representations false or misleading.  IKEA also knew, or had reason to know, that its misrepresentations and omissions would induce Class members to make purchases of merchandise at IKEA locations or to make additional purchases of merchandise.

73.    As a direct and proximate result of IKEA's acts and omissions described herein, Plaintiff and putative Class members have suffered harm, and will continue to do so.

74.    IKEA's misrepresentations or omissions were material and a substantial factor in Plaintiff and Class members' making purchases or additional purchases of merchandise at IKEA locations.

75.     IKEA intended its misrepresentations or omissions to induce Plaintiff and Class members to make purchases or additional purchases of merchandise at IKEA locations, or had reckless disregard for same.

76.     But for these misrepresentations (or omissions), Plaintiff and Class members would not have made purchases or additional purchases of merchandise at IKEA locations, an/or would have made purchases elsewhere.

77.     Plaintiff  and  Class  members  were  justified  in  relying  on  IKEA's misrepresentations.  The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated, to each Class member.

78.     Plaintiff  and  Class  members  were  damaged  by  reason  of  IKEA's misrepresentations or omissions alleged herein.

### FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

79.     Plaintiff repeats the preceding paragraphs as if set forth fully herein.

80.     By means of IKEA's wrongful conduct alleged herein, IKEA knowingly induced Plaintiff and members of the Class to use the discount coupon by fraudulent, unfair, deceptive, unconscionable, and/or oppressive means.

81.     IKEA knowingly received and retained wrongful benefits from Plaintiff and members of the Classes.  In so doing, IKEA acted intentionally or with conscious disregard for the rights of Plaintiff and members of the Classes.

82.     As a result of IKEA's wrongful conduct as alleged herein, IKEA has been unjustly enriched at the expense, and to the detriment, of Plaintiff and members of the Classes.

83.     IKEA's unjust enrichment is traceable to, and resulted directly and proximately from, the wrongful conduct alleged herein.

84.     It is unfair and inequitable for IKEA to be permitted to retain the benefits it received, and that it may still be receiving, without justification, from the wrongful conduct alleged herein.  IKEA's retention of such benefits under the circumstances is inequitable.

85.     The financial benefits derived by IKEA rightfully belong to Plaintiff and members of the Classes in whole or in part.  IKEA should be compelled to account for and disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received from them.   A constructive trust should be imposed upon all wrongful or inequitable sums received by IKEA traceable to Plaintiff and the members of the Classes.

86.     Plaintiff and members of the Classes have no adequate remedy at law.

87.     IKEA's fraudulent and unilateral decision how to apply the discount coupon and return policy amounts to an illusory promise rendering any agreement unenforceable, unconscionable, void, or voidable.

## FIFTH CLAIM FOR RELIEF
### PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 PA. STAT. § 201-1, *ET. SEQ.*

88.     Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

89.     Plaintiff brings this count on his own behalf and on behalf of all Class members.

90.     IKEA engaged in fraudulent and deceptive conduct in violation of Pennsylvania Unfair Trade Practices and Common Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-1 *et. seq.* by informing Plaintiff and other Class members that it would provide a full refund on returned merchandise purchased using the coupon at issue when the total purchases still exceeded the set amount before tax after the return.

91.     Additionally, Defendant engaged in fraudulent and deceptive conduct in violation of UTPCPL when it did not provide Plaintiff and other Class members the full value of the promised amount off total purchases (*e.g.*, $25) of set amounts (*e.g.*, $150 or more) when

merchandise purchased using the coupon at issue was returned and the total purchases still exceeded the set amount before tax after the return.

92.     The goal, purpose and/or effect of IKEA's fraudulent and deceptive scheme was to retain additional profits for itself and continue to protect itself against perceived risk.

93.     As a direct and proximate result of IKEA's deceptive and fraudulent conduct violating the UTPCPL, Plaintiff and other Class members suffered injury.  The injury consists of the amount of the reduction in price assigned by IKEA to each product purchased with the coupon and then returned for the reduced price when the total purchases still exceeded a set amount before tax after the return.

94.     This injury is of the type the UTPCPL was designed to prevent and directly results from IKEA's unlawful conduct.

95.     In addition to actual damages, Plaintiff and other Class members are entitled to declaratory and injunctive relief as well as reasonable attorney's fees and costs pursuant to 73 Pa. Stat § 201-9.2.

## SIXTH CLAIM FOR RELIEF
### DECLARATORY RELIEF

96.     Plaintiff repeats the foregoing paragraphs as if set forth herein.

97.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

98.     As described above, this Court has jurisdiction over this matter, and therefore may declare the rights of Plaintiff and the Classes.

99.     Class-wide declaratory relief is appropriate where a Defendant has "acted or refused to act on grounds that apply generally to the class."

100.    IKEA have established a system through which merchandise purchased using the coupon at issue is assigned a diminished value based on a formula for purposes of what constitutes a full refund amount if that merchandise is returned.

101.    A judicial declaration as to whether this system is fair, reasonable and appropriate so the parties may ascertain their rights, duties, and obligations with respect to one another is necessary.

102.    The Court should use its equitable powers to declare that this system does not fairly, reasonably or appropriately value the merchandise purchased with the coupon such that when a customer returns the merchandise purchased with the coupon and the original purchase still exceeds a set amount, the amount the customer receives under the return policy is not a full refund price, but rather a wrongfully reduced price, and IKEA is liable to Plaintiff and the Classes for damages caused by that practice.

**SEVENTH CLAIM FOR RELIEF**
**INJUNCTIVE RELIEF**

103.    Plaintiff repeats the foregoing paragraphs as if set forth herein.

104.    This is an action for permanent injunctive relief seeing to enjoin IKEA from continuing to imposing a system through which merchandise purchased using the coupon at issue is assigned a diminished value based on a formula for purposes of what constitutes a full refund amount if that merchandise is returned.

105.    Plaintiff and other class members are persons aggrieved by IKEA's practices and are entitled to seek an injunction against IKEA to permanently enjoin it, and to recover their reasonable attorneys' fees and court costs.

106.    The foregoing actions and conduct by IKEA continue at present, and will continue unabated, unless and until prohibited by this Court and constitute a violation of law.

107.    Plaintiff and the classes have no adequate remedy at law and they - and the consuming public - will or are likely to suffer irreparable harm unless IKEA's practices alleged herein are enjoined.

108.    Plaintiff and the classes will suffer irreparable harm if an injunction is not granted as monetary damages cannot force IKEA to correct its improper conduct, change its improper practices or enjoin it from continuing its improper practice.

109.    The requested injunction promotes the public interest by furthering the proper application of law and preventing the improper collection of improper charges from unknowing consumers.

110.    Accordingly, Plaintiff and the classes asks this Court to enjoin IKEA from a implementing a system through which merchandise purchased using the coupon at issue is assigned a diminished value based on a formula for purposes of what constitutes a full refund amount if that merchandise is returned.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

A.    Declaring IKEA's conduct to be a breach of contract or a breach of the duty of good faith and fair dealing

B.    Declaring IKEA's conduct alleged herein to be fraudulent, deceptive, wrongful, unfair, inequitable, and unconscionable;

C.    Restitution owing to Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

D.    An accounting and disgorgement of the ill-gotten gains derived by IKEA's misconduct;

E.    Actual damages in an amount according to proof;

F.   A temporary and permanent injunction enjoining IKEA from engaging in the same wrongful conduct going forward, including but not limited to requiring IKEA to adequately disclose facts to render truthful its representations;

G.   Punitive and exemplary damages;

H.   Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

I.   Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees; and

J.   Such other relief as this Court deems just and proper.

Dated:  __September 13, 2018__                        Respectfully submitted,

                                        /s/DJS8892

                                        Richard M. Golomb, Esquire
                                        Kenneth J. Grunfeld, Esquire
                                        David J. Stanoch, Esquire
                                        **GOLOMB & HONIK, P.C.**
                                        1835 Market Street, Suite 2900
                                        Philadelphia, PA 19103
                                        Phone: (215) 985-9177
                                        Fax:    (215) 985-4169
                                        Email: rgolomb@golombhonik.com
                                                  kgrunfeld@golombhonik.com
                                                  dstanoch@golombhonik.com

*Attorneys for Plaintiff and the Proposed Classes*